# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1469

_____

A&L Laboratories, Inc.,                         *
                                                *
              Plaintiff - Appellee,             *
                                                *
v.                                              *
                                                *
Bou-Matic LLC, a Nevada corporation,            *    Appeals and Cross-Appeals from the
                                                *    United States District Court for the
              Defendant - Appellant.            *    District of Minnesota.
--------------------------------------------
Bou-Matic LLC;                                  *
                                                *
    Counter Claimant - Appellant,               *
                                                *
Bou-Matic Technologies Corporation,             *
                                                *
    Counter Claimant,                           *
                                                *
v.                                              *
                                                *
A&L Laboratories, Inc.; Hypred, S.A.;           *
Franck Monmont,                                 *
                                                *
    Counter Defendants - Appellees.             *

_____

No. 05-1471
_____

| | |
|---|---|
| A&L Laboratories, Inc., | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * |
| | * |
| Bou-Matic, LLC, a Nevada corporation, | * |
| | * |
| Defendant - Appellee. | * |

---------------------------------------------

| | |
|---|---|
| Bou-Matic LLC; Bou-Matic | * |
| Technologies Corporation, | * |
| | * |
| Counter Claimants - Appellees, | * |
| | * |
| v. | * |
| A&L Laboratories, Inc., | * |
| | * |
| Counter Defendant - Appellant, | * |
| | * |
| Hypred, S.A.; Franck Monmont, | * |
| | * |
| Counter Defendants. | * |

_____

Submitted: September 14, 2005
Filed: November 17, 2005
_____

Before BYE, BRIGHT, and SMITH, Circuit Judges.
_____

-2-

BRIGHT, Circuit Judge.

A&L Laboratories ("A&L") brought this action against Bou-Matic LLC ("Bou-Matic"), seeking a declaration of non-infringement of sixty-seven common law or foreign trademarks and asserting unfair competition, defamation and other claims against Bou-Matic. Bou-Matic counterclaimed, asserting common law trademark infringement and several other claims. The district court[1] dismissed the majority of the parties' claims, held A&L had a license in trademarks owned by Bou-Matic, and ordered A&L to pay a 3% license fee to Bou-Matic for the use of the license. Bou-Matic appealed, and A&L cross-appealed. We affirm.

## I. BACKGROUND

The conflict in this case centers on the ownership of trademarks for various chemicals used in dairy sanitation and udder hygiene. A&L Laboratories manufactures these chemicals and for many years engaged in a business relationship with Bou-Matic's predecessor, a distributor named DEC International ("DEC"). A&L supplied DEC with chemicals and DEC then distributed these products to its customers.

In June 2000, A&L and DEC entered into their last contract, the Global Purchasing Agreement ("GPA"). Under the terms of this agreement, A&L and its parent company, Hypred, manufactured products for DEC and, at DEC's direction, placed DEC's "BOU-MATIC" trademark and other product-name trademarks on the product labels. "BOU-MATIC" was the name of the division within DEC that did business with A&L Laboratories. DEC bought these products from A&L and then resold them to its customers. The GPA specified that A&L could sell directly to these

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

customers only if it first obtained DEC's permission and paid DEC a 5% commission over the first $4,000 of those sales.

In August 2001, DEC filed for bankruptcy. Several months later, A&L and DEC negotiated an Amendment to the GPA that would allow A&L to sell products directly to consumers while DEC was in bankruptcy. Under the Amendment, DEC no longer required A&L to obtain its permission before selling to its customers, and A&L now agreed to pay DEC a 8.5% commission for each sale rather than the original 5% rate. Paragraph 5 of the Amendment explains the purpose of the commission rate:

> DEC and HYPRED intend that:
> a) the commission income to DEC will equal the income . . . that DEC derived from the Sanitation and Udder Health program as operated prior to this Amendment; [and,]
> b) the commission compensates DEC for, among other things, HYPRED's continued use of DEC's trade name "BOU MATIC" during the term of this Amendment.

Appellees' Add. at 16. The Amendment was intended to operate as an interim agreement while DEC remained in bankruptcy.

In September 2002, Bou-Matic LLC, a new company, purchased, through the bankruptcy court, the division of DEC that did business with A&L. Shortly thereafter, DEC rejected the GPA and the Amendment, which it was entitled to do under the Bankruptcy Code. A&L; A&L's parent company, Hypred; and Bou-Matic LLC then entered into negotiations for a new supply agreement. The parties operated under the terms of the amended GPA for several months while the negotiations were ongoing. When the negotiations failed, this litigation ensued.

## II.  PROCEDURAL HISTORY

A&L filed suit against Bou-Matic LLC, requesting a declaration of non-infringement of sixty-seven trademarks and asserting claims for unfair competition, defamation, deceptive trade practices, and tortious interference with contract.  Bou-Matic counterclaimed, asserting common law trademark infringement, unfair competition, false advertising, misappropriation of trade secrets, breach of contract and breach of fiduciary duty.  In addition, Bou-Matic sought an accounting for commissions owed by A&L.  Both parties filed motions for summary judgment.

The district court judge dismissed the majority of both parties' claims.  It ruled that Bou-Matic owned forty-one of the sixty-seven trademarks and that A&L held a license in those trademarks by virtue of Paragraph 9 of the amended GPA.  The case went to trial before Judge Magnuson on the single issue of the license fee.  The court noted that, although A&L and Bou-Matic were initially partners, they became competitors when the license arose.  At trial, however, the parties presented evidence of licenses only between partners.  Neither party discussed evidence of licenses between competitors in the industry.  The parties presented evidence regarding the value and benefits of the Bou-Matic product names versus those of the underlying chemical formulations, the parties' treatment of the products within their own companies, the relationship between the parties, and the prior agreements between the parties.  Based on the evidence presented, the district court determined that 3% was an appropriate license fee.

## III.  DISCUSSION

We review the district court's summary judgment decision de novo and apply the same standards as the trial court.  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows that no

genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Krenik v. County of Le Sueur, 47 F.3d 953 (8th Cir. 1995).

On appeal, Bou-Matic first argues that the district court erred in concluding that under Paragraph 9 of the amended GPA, DEC's rejection of the agreement created a license in favor of A&L. Paragraph 9 of the amended GPA states

> If, after the effective date of this Amendment and before June 27, 2005, DEC commits a new and material breach of the [GPA] which remains uncured fourteen (14) days after DEC has received written notice of the breach (it being understood that DEC's continuing nonpayment of its prepetition indebtedness does not constitute a material breach under this paragraph), . . . [A&L] . . . will be entitled to continue to use the trade names and product names associated with those Chemicals and Supplies, but excluding the trade name "BOU MATIC."

Appellees' Add. at 17.

According to Bou-Matic, rejecting the amended GPA did not constitute a new breach and therefore did not give rise to a license under Paragraph 9. Title 11 U.S.C. § 365(g)(1)(2004) asserts that the rejection of an executory contract is a breach of that contract that is deemed to have occurred immediately before the date of filing the bankruptcy petition. Because DEC's rejection is deemed to have occurred before the Amendment was signed, Bou-Matic argues, it cannot constitute a new breach.

This argument ignores the intentions of DEC and A&L, which were clear and were made after DEC entered bankruptcy. It also ignores the main purpose of § 365(g), which is to determine the priority of the creditor/non-debtor's claim. Section 365(g) treats a rejection as a breach to ensure that the non-debtor will have a claim against the debtor. It does not determine the rights of parties regarding the contract. In re Lavigne, 114 F.3d 379 (2nd Cir. 1997). In this case, Paragraph 9, added post-bankruptcy, clearly states that if DEC committed a new and material breach, A&L

would "be entitled to continue to use the trade names and product names associated with those Chemicals and Supplies." Section 365(g) does not operate to avoid this result.

If a license was created, Bou-Matic argues that the district court erred in holding that the license bound Bou-Matic. Bou-Matic maintains that it did not assume DEC's obligations, because it bought DEC's assets in a "free and clear" sale. Because A&L and DEC entered into the Amendment post-bankruptcy and the bankruptcy court approved the Amendment, only a specific order of the bankruptcy court could subsequently alter or extinguish it. Neither DEC nor Bou-Matic asked the bankruptcy court to issue such an order. A&L made this argument before the district court, which considered it, and makes it again on appeal. DEC's sale of its assets to Bou-Matic could not extinguish the license created by the Amendment, because DEC and Bou-Matic never requested the bankruptcy court to do so.

If a license exists and is binding on Bou-Matic, Bou-Matic argues that the district court erred in excluding twenty-six of the sixty-seven product-name trademarks from its determination of ownership. Although Bou-Matic characterizes the omission of the remaining twenty-six marks as inadvertent, it brought this issue to the district court's attention on several occasions. The court refused to amend its order to include the additional marks because Bou-Matic had failed to present evidence that DEC owned the twenty-six marks at issue. Trademark ownership may be assigned, but the assignor may transfer only what it owns. J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:14 (4th ed. 2004). Before Bou-Matic may be declared owner of all sixty-seven marks, it must show DEC owned or used all sixty-seven. However, Bou-Matic presented only evidence that DEC had common law ownership of forty-one trademarks. The district court correctly concluded there was not enough evidence to decide the ownership of the remaining twenty-six marks.

Bou-Matic also argues that the district court erred in not applying a higher license fee. After a bench trial on this issue, the trial court found that, based on the evidence presented, a 3% license fee was appropriate. We review a district court's factual findings for clear error. A finding is clearly erroneous when it is not supported by substantial evidence. Substantial evidence means "such evidence as a reasonable mind would accept as sufficient to support a conclusion." Roberts v. Browning, 610 F.2d 528, 532 (8th Cir. 1979).

The district court's finding is supported by substantial evidence. Because DEC and A&L were cooperating businesses, there is no direct evidence regarding the license fee that the two would have agreed to as competitors. In addition, although the district court requested them to do so, the parties presented no evidence of license agreements between competitors in the industry. However, the district court received enough evidence from which it could determine an appropriate license fee.

The parties presented evidence regarding the value and benefits of the Bou-Matic product names versus those of the underlying chemical formulations, the parties' treatment of the products within their own companies, the relationship between the parties, and the prior agreements between the parties. Mr. Robert Kmoch, Bou-Matic's former president, testified that the individual product names added significant value to the products. On the other hand, A&L's president, Mr. Franck Monmont, contended that the underlying chemical formulation creates product value because customers purchasing the products reference their individual effects rather than the Bou-Matic name. A&L began a transition process to phase out the use of Bou-Matic's name; this action demonstrates that there was value to both the chemical formulations and the Bou-Matic trade names.

Comparing the parties' prior agreements also provides evidence of an appropriate license fee. As partners, the parties' agreement provided that A&L could sell directly to customers only if it first asked DEC's permission and if it paid a 5%

commission on each sale. After bankruptcy, DEC could not sell to its own customers. The parties then amended the GPA to allow A&L to sell directly to customers. Under the amended GPA, A&L was no longer required to ask DEC's permission before each sale, and it now became obligated to pay a commission rate of 8.5%. Paragraph 5 of the Amendment explains the purpose of the commission:

> DEC and HYPRED intend that:
> a) the commission income to DEC will equal the income . . . that DEC derived from the Sanitation and Udder Health program as operated prior to this Amendment; [and,]
> b) the commission compensates DEC for, among other things, HYPRED's continued use of DEC's trade name "BOU MATIC" during the term of this Amendment.

Appellees' Add. at 16.

Under the original agreement, A&L paid a commission of 5% on sales that it made with DEC's permission. Under the amended GPA, the 8.5% commission rate compensated DEC, and then Bou-Matic, for both the profits of A&L's sales and for A&L's use of the "BOU-MATIC" brand trademark. The difference between the two commission structures is 3.5%, and is representative of the value of the trademarked product names as well as the "BOU-MATIC" brand trademark. The parties presented evidence that there was value in both the "BOU-MATIC" mark and in the remaining forty-one product names, so the appropriate license fee for the chemical product names alone would be slightly less than 3.5%. In light of the above evidence, we cannot say that the district court erred in determining a license fee of 3%.

Next, Bou-Matic argues that the trial court erred in failing to add as a necessary party and plaintiff A&L's parent company, Hypred. We review for abuse of discretion the district court's decision on the inclusion of a party to a lawsuit. Guerra v. Drake, 371 F.3d 404 (8th Cir. 2004). The district court denied Bou-Matic's motion

to join Hypred because Hypred uses the trademarks in Europe and the parties did not raise issues of foreign trademark ownership. In addition, Bou-Matic has not shown that A&L would not properly pay the license fee pursuant to the district court's order of August 2, 2000. We cannot say that the district court abused its discretion in failing to join Hypred.

Finally, Bou-Matic asserts that the district court erred in denying Bou-Matic's request for an accounting of A&L's sales after November 25, 2002. The district court permitted Bou-Matic "to make a monthly accounting of the payment of royalties within 30 days of each calendar month until A&L completely phases out its use of the Bou-Matic product names, or at the latest through July 2005." During discovery and trial, A&L provided Bou-Matic with sales information from November 25, 2002, until May 31, 2004. Bou-Matic's principal concern regarding its request for an accounting appears to arise from the fact that the sales figures A&L initially provided were erroneously calculated. When A&L discovered that the figures were inaccurate, it brought the mistake to Bou-Matic's attention and corrected it. Bou-Matic claims that this entitles it to an accounting. The district court concluded, and we agree, that this evidence does not show that A&L misstated its sales or failed to provide information such that an accounting would be necessary.

A&L Laboratories cross-appeals, asserting that Bou-Matic LLC lacks standing to pursue this appeal because the trademarks in question belong to its related corporation, Bou-Matic Technologies. Bou-Matic LLC uses the trademarks at issue and benefits from them. Bou-Matic LLC has standing to pursue this appeal because it was aggrieved by the district court's decision.

A&L further maintains that the district court erred in determining that its license to use the trademarks is subject to any fee because the clause that gave rise to the license says nothing about a fee. However, in its complaint, A&L asked the district court to award "any other relief the court deems just and equitable." Once the

court determined that a license existed, it concluded that it was just and equitable for A&L to pay Bou-Matic a fee rather than pay nothing for the use of its license. The district court did not err in this respect.

Finally, A&L argues that the district court should not have decided on summary judgment that Bou-Matic owns the trademarks because factual disputes on the issue of ownership remain. A&L and DEC established that A&L did not own the trademarks when they entered into the Amendment to the GPA. The stated purpose of the Amendment was to give A&L the "requisite approval to sell DEC-branded products." If A&L had owned the trademarks, it would not have needed DEC's permission to use them. Bou-Matic in turn acquired DEC's trademark rights when it bought DEC's BOU-MATIC division. No factual dispute exists on this issue.

For the foregoing reasons, we affirm.

_____