This Opinion Is a
Precedent of the TTAB

Mailed: April 21, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Moke America LLC*
*v.*
*Moke USA, LLC*[1]

_____

Opposition No. 91233014

_____

Ruth Carter of Venjuris, P.C. for Moke America LLC.

Michael J. Rye of Cantor Colburn LLP for Moke USA, LLC.

_____

Before Bergsman, Lykos and Dunn, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Moke USA, LLC, through its predecessor-in-interest American Custom Golfcars,

Inc. aka ACG Inc. (Applicant), filed an application on the Principal Register for the

---

[1] On February 27, 2020, following briefing of this case, Applicant filed a motion to substitute Moke USA, LLC as party defendant based on American Custom Golfcars, Inc. a/k/a ACG, Inc.'s assignment of its Application Serial No. 76718389, executed on June 12, 2019. 52 TTABVUE 1-2. The USPTO recorded the assignment on February 27, 2020, at reel 6877, frame 0345. Applicant argues that substitution is appropriate because the discovery and testimony periods closed prior to the assignment. We grant Applicant's motion to substitute Moke USA, LLC as the defendant. We use the term Applicant in this decision to refer to these two companies.

mark MOKE and design, reproduced below, for "motor vehicles, namely, four wheel low speed land vehicles and automobiles," in Class 12.[2]



The description of the mark reads as follows:

> The mark consists of the wording "MOKE" in a stylized font surrounded by a rectangular border.
>
> Color is not claimed as a feature of the mark.

Moke America LLC (Opposer) filed a Notice of Opposition against the registration of Applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), alleging prior common law use of the mark MOKE in connection with vehicles and vehicle components. Opposer alleges that it acquired rights in the MOKE trademark from Mini Mania, Inc., via an assignment dated November 14, 2016.[3]

> 3. Prior to assigning its rights to MOKE to Opposer, Mini had common law trademark rights for MOKE in relation to vehicles and vehicle components, starting in 1974. (The assignment between Opposer and Mini states that the first date of use of this mark in commerce in the United States in connection with these goods is March 31, 1999; however, Mini attests that it has used this mark in commerce since 1974. The records provided to Opposer by Mini shows [sic] transactions dating back to only 1993 because that is the date when Mini first obtained a computer and began keeping electronic records.) Subsequently, Mini owed [sic] the MOKE mark for use in relation to these goods until Mini assigned its trademark rights to Opposer. The intellectual property assignment to Opposer included a license to Mini to continue to use the MOKE mark on

---

[2] Application Serial No. 76718389, filed August 24, 2015, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based on Applicant's claim of first use of its mark anywhere and in commerce as of August 10, 2015.

[3] Notice of Opposition ¶2 (1 TTABVUE 4).

> vehicles and vehicle components; therefore the Opposer's MOKE mark has been continuously used in commerce since 1974.
>
> 4. Since 1974, Mini has used the MOKE mark continuously in commerce. Between 1993 and 2016, Mini completed sales of MOKE products with customers in every state in the United States except Delaware and Mississippi.[4]

Applicant, in its Answer, denied the salient allegations in the Notice of Opposition, and asserted various affirmative defenses.[5]

## I. The Record

The record includes the pleadings, and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the file of the subject application. The record also includes:

### A. Opposer's testimony and evidence.

1. Testimony affidavit of Todd Rome, Opposer's Chief Executive Officer and exhibits;[6] and

---

[4] Notice of Opposition ¶¶3-4 (1 TTABVUE 4).

[5] Because Applicant did not discuss the affirmative defenses in its trial brief, we deem the affirmative defenses waived. *See Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 UISPQ2d 1419, 1422 (TTAB 2014); *Alcatraz Media, Inc. v. Chesapeake Marine Tours, Inc.*, 107 USPQ2d 1750, 1752 n.6 (TTAB 2013), *aff'd*, 565 F. App'x 900 (Fed. Cir. 2014) (mem.).

[6] 24 TTABVUE. We note that 24 TTABVUE 83-141 is blank. Parties to Board proceedings are responsible for ensuring the documents they introduce are complete and legible. Trademark Rule 2.126(a)(2), 37 C.F.R. § 2.126(a)(2) ("Exhibits pertaining to an electronic submission must be made electronically as an attachment to the submission and must be clear and legible."); *Alcatraz*, 107 USPQ2d at 1758 (citing *Hard Rock Cafe Licensing Corp. v. Elsea*, 48 USPQ2d 1400, 1404 (TTAB 1998) ("It is reasonable to assume that it is opposer's responsibility to review the documents it submits as evidence to ensure that such submissions meet certain basic requirements, such as that they are legible….")), *aff'd*, 565 F. App'x 900 (Fed. Cir. 2014) (mem.); *Weider Publ'ns, LLC v. D&D Beauty Care Co.*, 109 USPQ2d 1347, 1351 (TTAB 2014) (onus is on party making submissions to ensure that, at a minimum, "all materials are clearly readable by the adverse party and the Board"), *appeal dismissed per stipulation*, No. 14-1461 (Fed. Cir. Oct. 10, 2014).

2. Cross-examination testimony deposition of Todd Rome and exhibits.[7]

### B. Applicant's testimony and evidence.

1. Notice of reliance on Applicant's responses to Opposer's first set of interrogatories;[8]

2. Notice of reliance on Opposer's responses to Applicant's first set of interrogatories;[9]

3. Testimony declaration of Jordi Ricart, Managing Partner of Moke USA, LLC;[10]

4. Testimony declaration of Reiner "Ray" Hoogenraad, Applicant's former Chief Executive Officer and exhibits;[11] and

5. Testimony deposition of Reiner "Ray" Hoogenraad.[12]

### II. Standing

Standing is a threshold issue in every inter partes case. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014);

---

[7] 42-46 TTABVUE. Although Applicant introduced the cross-examination testimony deposition of Todd Rome, we list it here so that it follows Todd Rome's testimony affidavit in the traditional presentation of direct testimony followed by cross-examination.

[8] 26 TTABVUE 8-23. Pursuant to a stipulation between the parties, Applicant's responses to Opposer's first set of interrogatories are admissible through Applicant's notice of reliance. (39 TTABVUE 3).

[9] 26 TTABVUE 24-33.

[10] 27 TTABVUE. Pursuant to the stipulation between the parties, Applicant has withdrawn paragraph Nos. 10-13, 16, and 19-20 and Exhibits A and B of the Ricart declaration. (39 TTABVUE 3).

[11] 28 TTABVUE. Pursuant to the stipulation between the parties, Applicant has withdrawn paragraph Nos. 7, 8, and Exhibit B of the Hoogenraad declaration. (39 TTABVUE 2).

[12] 29-30 TTABVUE. Applicant timely took the Hoogenraad testimony deposition on June 19, 2018, pursuant to a stipulation to extend trial dates. (8 TTABVUE).

*John W. Carson Found. v. Toilets.com, Inc.*, 94 USPQ2d 1942, 1945 (TTAB 2010). To establish standing in an opposition or cancellation proceeding, a plaintiff must prove that it has a "real interest" in the proceeding and a "reasonable" basis for its belief of damage. *See Empresa Cubana*, 111 USPQ2d at 1062; *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (TTAB 1982).

Todd Rome, Opposer's Chief Executive Officer, testified that Opposer acquired the purported common law trademark rights to the MOKE trademark from Mini Mania, Inc. on November 14, 2016, through an assignment and license back,[13] and that "[s]ince acquiring the MOKE trademark, [Opposer] has consistently sold MOKE vehicles in the United States to individuals and distributors" throughout the United States.[14] Finally, Mr. Rome testified as follows:

> 14. [Opposer] regularly receives communications that indicate source confusion between its MOKE products and those of [Applicant], which negatively impacts [Opposer's] business.[15]

This testimony establishes that Opposer has a real interest in the proceeding and a reasonable basis for its belief that it will be damaged by the registration of Applicant's mark. Therefore, Opposer has proven that it has standing. *See Lipton Indus., Inc. v. Ralston Purina Co.*, 213 USPQ at 189 (claim that defendant's mark

---

[13] Rome Decl. ¶4 (24 TTABVUE 3).

[14] *Id.* at ¶7 (24 TTABVUE 4).

[15] *Id.* at ¶14 (24 TTABVUE 6).

will cause likelihood of confusion which is not wholly without merit is sufficient to prove standing). Applicant, in its brief, did not challenge Opposer's standing.

### III.       Priority

A party asserting common law rights in a mark as a basis to oppose registration under Section 2(d), 15 U.S.C. § 1052(d), must, in addition to proving a likelihood of confusion, prove that it has priority based on its alleged ownership of common law rights in its mark. *See, e.g., Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 57 USPQ2d 1720, 1721 (Fed. Cir. 2001). In this case, Applicant disputes Opposer's priority.

### A. Background

Applicant's constructive date of use (i.e., its application filing date) is August 24, 2015. *See Levi Strauss & Co. v. R. Josephs Sportswear Inc.*, 36 USPQ2d 1328, 1332 (TTAB 1994) (an application filing date for a use-based application can establish constructive use of a mark). However, uncontradicted evidence shows that Applicant made its first sale of a MOKE vehicle on August 10, 2015.[16] Accordingly, August 10, 2015, is Applicant's priority date, meaning that Opposer must demonstrate ownership and use of its pleaded common law mark prior to this date. *See Giersch v. Scripps*, 90 USPQ2d 1020, 1023 (TTAB 2009). *See also Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981).

---

[16] Applicant's response to Opposer's interrogatory No. 1(b) (26 TTABVUE 12); Hoogenraad Testimony Dep., p. 13 (29 TTABVUE 15) and Exhibit 4 (30 TTABVUE 9); Hoogenraad Decl. ¶3 (28 TTABVUE 2).

As noted above, Opposer acknowledges that it obtained common law rights in the MOKE trademark from Mini Mania, Inc. on November 14, 2016, a date subsequent to Applicant's priority date. However, Opposer contends that it is entitled to rely on its predecessor's prior use of the mark.[17] In his initial testimony affidavit, Opposer's CEO Todd Rome testified as follows:

> 3. I had been aware of Mini Mania Inc.'s ("Mini Mania's") MOKE branded products for years prior to asking to purchase a moke-style vehicle in 2016, including their kit to build your own MOKE vehicle. They were the only company in the United States that I knew of that sold MOKE vehicle components. I also had the idea of building a variation of Mini Mania's MOKE as an electric car.
>
> 4. Indeed, Moke America subsequently obtained the MOKE trademark from Mini Mania on November 14, 2016. See Exhibit A. I signed this Assignment on behalf of Moke America. As stated in the Assignment, Moke America obtained the rights in the MOKE trademark dating back to March 31, 1999. My understanding is that Mini Mania started using the MOKE trademark in 1974, but did not keep electronic records of its MOKE sales until 1993.
>
> 5. Mini Mania provided me a copy of its sales record of MOKE vehicles and vehicle components. The first sale listed was dated January 9, 1993, and the last sale listed was November 14, 2016. A true and complete copy of this record is provided herein. *See* Exhibit B. My understanding is Mini Mania had sold vehicles and vehicle components using the MOKE trademark since 1974 but only began keeping electronic records of its sales in 1993.[18]

We reproduce an excerpt from Exhibit B (the Mini Mania sales records) below:[19]

---

[17] Rome Decl. ¶4 (24 TTABVUE 3).

[18] *Id*. at ¶5 (24 TTABVUE 3-4).

[19] 24 TTABVUE 23. Applicant objects to Exhibit B because Opposer did not clearly label or identify the document. (49 TTABVUE 24). We overrule Applicant's objection on the

| invno | invdte | custno | item | descrip | price | qtyshp | state |
|-------|--------|--------|------|---------|-------|--------|-------|
| 53067 | 1/9/1993 | VAN001 | 0722-39 | SPEEDO CABLE, MOKE | 9.26 | 1 | CA |
| 53201 | 1/18/1993 | WHI004 | BOOK21 | MOKE BOOK | 16.95 | 1 | PA |
| 54431 | 3/15/1993 | MCL007 | 0722-39 | SPEEDO CABLE, MOKE | 7.5 | 1 | CA |
| 55180 | 4/12/1993 | DIC001 | 0722-39 | SPEEDO CABLE, MOKE | 10.95 | 1 | IA |
| 55306 | 4/17/1993 | CAS009 | BOOK21 | MOKE BOOK | 16.95 | 1 | WA |

On cross-examination, Todd Rome explained that the basis for his understanding that Mini Mania used the MOKE trademark since 1974 is the pre-assignment research performed by his lawyer.[20]

> A. [Mini Mania] have been in business since 1972 or '74 selling Mini and Moke parts and accessories and shells and glass and trinkets and anything regarding Minis and Mokes.
>
> Q. How do you know that?
>
> A. I had a lawyer represent me who helped me through the process to make sure that [Mini Mania] were who they said they were.
>
> Q. Your knowledge is based on whatever your lawyer discovered or found out?
>
> A. And what I saw for myself, yes.
>
> Q. How do you know when they first sold each of their products?
>
> *   *   *

---

mislabeling or misidentification ground because it is clear which document sets forth the sales records of Mini Mania.

[20] Todd Rome's contention that Mini Mania claims trademark rights in the MOKE trademark back to 1974 is contradicted by the License and Assignment Agreement that states "WHEREAS, Mini Mania owns rights in and to the first documented use date of the Marks dating back to March 31, 1999." 24 TTABVUE 8. The sales records introduced by Todd Rome show sales since 1993. In addition, as discussed below, Todd Rome did not explain how Opposer's attorney determined that Mini Mani sold MOKE branded products as of 1974. Opposer's counsel did not testify regarding his/her investigation into Mini Mania's sales.

A.   What I do know, from our lawyers, is that they've been in business since 1972 or '74, and until this day, they still sell tons and tons of different products.

Q.   Do you have any knowledge as to when they first sold any of these products?

A.   Again '72 or '74 was in all the records and all the paperwork that we submitted on what year he started. The records, they were all submitted to the patent office, trademark office, showing records of every state and city that he sold products Moke related.

\*        \*        \*

Q.   Do you know how many of each product that they've sold has been sold each year?

A.   Me specifically?

Q.   Yes.

A.   We submitted the records, though, to the patent.

Q.   The answer is no.[21]

\*        \*        \*

Q.   Do you know if the products they sold were labelled with a Moke mark?

A.   Me, specifically, I do not know.[22]

**B. Applicant's objections to Opposer's priority evidence.**

Applicant objects to the Todd Rome testimony and exhibits regarding Mini Mania's use of the MOKE trademark.[23] Applicant argues that Todd Rome's testimony

---

[21] Rome Cross-Examination Dep., pp. 45-48 (42 TTABVUE 47-50). Opposer did not challenge Applicant's characterization of the last answer as "no."

[22] *Id.* at 49 (42 TTABVUE 51).

[23] Applicant's Brief, p. 8 (49 TTABVUE 10).

regarding Mini Mania's use of the MOKE trademark is hearsay and that Opposer failed to lay a proper foundation for its predecessor's sales records, which Opposer introduced under Federal Rule of Evidence 803(6), the business records exception to the rule against hearsay.[24]

Federal Rule of Evidence 803(6) states as follows:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> (6) *Records of a Regularly Conducted Activity.* A record of an act, event, condition, opinion, or diagnosis if:
>
>> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>>
>> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>>
>> (C) making the record was a regular practice of that activity;
>>
>> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>>
>> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

## 1. Business records exception to the hearsay rule.

Applicant objects to the admissibility of the Mini Mania sales records (which Opposer uses to try to prove priority rights starting in 1993) on the ground that Todd

---

[24] Appendix A, Applicant's Evidentiary Objections, pp. 4-5 (49 TTABVUE 27-28).

Rome and Opposer failed to lay the proper foundation to establish that Mini Mania's sales records meet the conditions of the business records hearsay exception.

> Mr. Rome suggests in paragraph 5 of his Affidavit that Exhibit B comprises a "sales record" of Mini Mania, Inc. and a true and complete copy of "this record is provided herein" at Exhibit B. However, no foundation has been provided for any business records. Mr. Rome is not qualified as a competent witness to properly authenticate Mini Mania's records, to testify to what the data in the documents is intended to reflect, when the documents were created, or whether they were kept and created by someone with knowledge of the facts stated therein. Mr. Rome is neither a custodian nor a witness competent to testify to these issues.[25]

Opposer argues that Applicant waived its objections to Todd Rome's testimony and exhibits because Applicant did not promptly raise them.[26]

> Indeed, both claims could have been cured, if Applicant had raised its objections at the appropriate time. By not filing motions to strike promptly after the evidence was proffered, Applicant did not preserve its objections, and thus, waived them.[27]

"As a general rule, [procedural] objections that are curable must be seasonably raised, or they will be deemed waived." *Nahshin v. Prod. Source Int'l, LLC*, 107 USPQ2d 1257, 1259 (TTAB 2013). *See also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 707.03(a) (2019) ("Objections to trial testimony are not waived for failure to make them during or before the taking of the deposition,

---

[25] *Id.* at 5 (49 TTABVUE 28).

[26] Opposer's Reply Brief, p. 8 (50 TTABVUE 17).

[27] *Id.*

provided that the ground for objection is not one that might have been obviated or removed if presented at that time.").

"[O]bjections to … testimony, on substantive grounds, such as that the proffered evidence constitutes hearsay or improper rebuttal, or is incompetent, irrelevant, or immaterial, generally are not waived for failure to raise them promptly, unless the ground for objection is one which could have been cured if raised promptly." TBMP § 707.04; *Anthony's Pizza & Pasta Int'l v. Anthony's Pizza Holding Co.*, 95 USPQ2d 1271, 1273 n.4 (TTAB 2009) ("plaintiff's hearsay objection to Ms. Delegal's testimony is not waived"), *aff'd*, 415 F. App'x 222 (Fed. Cir. 2010).

However, Opposer's contention that Applicant waived its objection that Opposer failed to lay the proper foundation for establishing that the Mini Mania sales records fall within the business records exception to the hearsay rule is a procedural issue, not a substantive issue. *See Pass & Seymour, Inc. v. Syrelec*, 224 USPQ 845, 847 (TTAB 1984). In *Pass & Seymour,* the Board held that the defendant waived both the foundation and the hearsay objections because (i) opposer could have cured the foundation objection to a purported business record exception to the hearsay rule if applicant seasonably raised it, and (ii) applicant based the hearsay objection solely on the exhibit's lack of proper foundation as business records. *See also Chase Manhattan Bank, N.A. v. Life Care Servs. Corp.*, 227 USPQ 389, 391 (TTAB 1985).

Prior to the 2017 amendments to the Trademark Rules of Practice, parties could introduce testimony by declaration or affidavit only by stipulation of the parties. In *Chase Manhattan,* Opposer introduced a survey by affidavit, and the applicant

objected in its trial brief that there was no adequate foundation for the evidence. The

Board found the objection untimely and thus waived.

> While there was no provision in the parties' stipulation as to how objections to admissibility of evidence submitted by affidavit were to be made, this did not excuse applicant from the requirement to make timely objection in writing to this Board promptly after receipt of the other party's evidentiary submission.

*Chase Manhattan*, 227 USPQ at 391.

Timeliness is obviously important where the defending party bases its objection on an inadequate foundation in order that the proffering party may have a fair opportunity to meet the foundation objections by evidentiary submissions during the periods set for trial. An objection to foundation raised for the first time in a trial brief is untimely because the party offering the testimony (whether by deposition, affidavit or declaration) does not have the opportunity to cure the alleged defect.

When a party takes testimony by deposition, it is clear that an objection to foundation raised during the deposition, and maintained in that party's trial brief, is timely. When a party offers testimony by declaration or affidavit, the defending party cannot seasonably raise an objection to foundation, and any other curable defect, until after receipt and review of the declaration or affidavit, which may be after the close of the relevant testimony period.

Guidance for determining the timeliness of an objection to foundation may be found in Trademark Rule 2.123(c), 37 C.F.R. § 2.123(c), which allows the adverse party 20 days after the filing of the affidavit/declaration to request cross-examination. In general, an objection made in this period provides sufficient notice to the party

offering the allegedly deficient testimony time to cure the defect, including time to request a reopening of testimony for the purpose of doing so, with minimal disruption to the trial schedule. The optimal times to object to testimony by affidavit or declaration are during the open testimony period of the proffering party or during the time allowed to request cross-examination, recognizing that a rare and unusual circumstance may present itself where an objection made outside those periods may be timely.

The defending party may seasonably raise the objection in different ways where the testimony is by declaration or affidavit depending on the circumstances of the case. For example, the defending party may elect to seek oral cross-examination, query the foundation for the testimony and exhibits introduced, and, if the defending party finds the foundation testimony to be insufficient, it may raise an objection to the testimony or exhibit on the deposition record. *See, e.g.*, *Barclays Capital Inc. v. Tiger Lily Ventures*, 124 USPQ2d 1160, 1167 (2017) (party objecting to declaration testimony [on substantive grounds] may either elect oral cross-examination or file a motion to strike in order to lodge an objection to declaration testimony.). In the alternative, the defending party may serve an objection on the party proffering the declaration or affidavit and assert the objection in its brief. The defending party should file the objection with the Board when made, to put the Board on notice that it made a timely objection and the party offering the witness may seek to extend or reopen testimony to cure the defect. The proffering party has the option of trying to cure the defect or arguing that the objection should be overruled. Finally, an objection

may be made by way of a motion to strike filed no later than the twenty days permitted for the defending party to elect cross-examination, which again puts the proffering party on notice that there may be a curable defect with respect to the foundation and puts the Board on notice that an extension or reopening of the testimony period may be sought, recognizing that a determination may be deferred to final decision. The key aspect is that a timely objection is lodged. The manner in which it is raised may vary depending on the circumstances. The above-noted process for raising procedural objections regarding testimony by affidavit or declaration is applicable to all pending and future inter partes cases before the Board.

We now turn to whether Applicant timely objected to the Mini Mania sales records. Applicant elected to cross-examine Todd Rome but did not raise its objection that Opposer failed to lay the foundation for the business records exception to the hearsay rule during or by the end of the cross-examination deposition. Rather, Applicant argues incorrectly that its objection is substantive and properly raised in its brief.[28] Under the circumstances described above, we find that Applicant waived its objection to the admissibility of the Mini Mania sales records because Applicant failed to assert its objection promptly after Opposer introduced the Todd Rome declaration into evidence.

Applicant also argues that because Todd Rome was the only witness Opposer identified in its pretrial disclosures, Opposer could not have cured the foundational

---

[28] Applicant's Brief, p. 9 (49 TTABVUE 32).

deficiencies.[29] Whether or not Todd Rome could have cured the foundational deficiencies is unknown inasmuch as Applicant foreclosed that opportunity because Applicant failed to raise its procedural objection timely.

Applicant's objection is overruled and the Mini Mania sales records attached as Exhibit B to the Todd Rome declaration are of record under the business records exception to the hearsay rule.[30] We will discuss the probative value of these records below.

### 2. Todd Rome Testimony

Apart from the sales records, Applicant objects to Todd Rome's testimony about Mini Mania's use of MOKE as a trademark. First, we hold that Mr. Rome's generalized testimony that he had been aware of Mini Mania's MOKE branded products for years before asking to purchase a "moke-style" vehicle in 2016 is not hearsay because he is testifying about his personal knowledge. *See* Fed. R. Evid. 602.[31]

Todd Rome also testified that it was his understanding that Mini Mania sold MOKE products at least as early as 1974. This, however, is hearsay because Rome also testified that he based this testimony on what his lawyers told him. Even if we

---

[29] Applicant's Brief, p. 9 (49 TTABVUE 32).

[30] The better practice is that a party should not wait until the last day of its testimony period to file a testimony affidavit/declaration. If the propounding party files its testimony affidavit/declaration on the last day of its testimony period, it may not have time to cure a procedural defect.

[31] Fed. R. Evid. 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."

were to assume, arguendo, that Todd Rome's testimony is not hearsay because Rome was testifying about what he thought or believed to be the facts, Applicant demonstrated on cross-examination that there was no credible foundational basis for that understanding and, therefore, Rome's testimony that Mini Mania used the MOKE trademark at least as early as 1974 would have no probative value. *See Liqwacon Corp. v. Browning-Ferris Indus., Inc.*, 203 USPQ 305, 316 (TTAB 1979) (oral testimony can be sufficient to establish prior use "providing the testimony is by a witness or witnesses personally conversant with the facts, and that it is clear, convincing, consistent, and sufficiently circumstantial to convince the trier of fact of the probative value thereof."); *GAF Corp. v. Anatox Analytical Servs., Inc.*, 192 USPQ 576, 577 (TTAB 1976) ("The testimony of opposer's witness is clear, convincing, uncontradicted and probative by virtue of his activities in connection with opposer's ANTAROX product line and his responsibilities therewith since 1961. As such it is competent to establish opposer's ownership of the registration of record and opposer's use of the mark ANTAROX for goods of the character described in the registration continuously since 1961."); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *City Nat'l Bank v. OPGI Mgmt. GP Inc./Gestion OPGI Inc.*, 106 USPQ2d 1668, 1673 (TTAB 2013) (petitioner's objection sustained concerning testimony of respondent's witness regarding events that occurred before May 2008, when his employment with respondent began; respondent failed to demonstrate that witness has personal knowledge regarding respondent's

history, or its use of disputed mark before that date). We, therefore, find that Rome's testimony that Mini Mania sold MOKE products since 1974 is hearsay with no probative value.

**C. Opposer's priority date.**

Bearing in mind that we must "look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use," *W. Fla. Seafood Inc. v. Jet Rests. Inc.*, 31 F.3d 1122, 31 USPQ2d 1660, 1663 (Fed. Cir. 1994), we find that Opposer did not prove that it used the MOKE trademark, either by itself or through its predecessor-in-interest, before Applicant's priority date of August 10, 2015. Rather, the earliest date of use on which Opposer can rely is November 14, 2016; the date Opposer acquired the MOKE trademark from Mini Mania because, as discussed below, there is no testimony or evidence that Mini Mania used the MOKE trademark prior to that date.[32] *See Westrex Corp. v. New Sensor Corp.,* 83 USPQ2d 1215, 1220 (TTAB 2007) (granting applicant's motion for summary judgment on the issue of priority because "[t]he documentary evidence of two sales transactions to the same purchaser, approximately three months apart, fails to support a finding of prior and continuous use of the GOLD LION mark by Chelmer Valve [opposer's assignor]. By logical extension, opposer cannot rely on Chelmer Valve as a predecessor in interest for asserting priority over applicant."); *Marion*

---

[32] Todd Rome authenticated the assignment and license back between Opposer and Mini Mania, and testified, without contradiction: "Since acquiring the MOKE trademark, [Opposer] has consistently sold MOKE vehicles in the United States to individuals and distributors." Rome Testimony Decl. ¶7 (24 TTABVUE 4). Opposer also introduced samples of trademark use and advertising to corroborate its use of the MOKE trademark after its acquisition of the mark. Rome Testimony Decl., Exhibits (24 TTABVUE 142-181).

*Labs. Inc. v. Biochemical/Diagnostics Inc.,* 6 USPQ2d 1215, 1217 (TTAB 1988) (the Board did not consider applicant's ownership of a mark acquired by an assignment because applicant offered no proof of its allegation of first use prior to opposer's marks); *Warner-Lambert Pharm. Co. v. Gen. Foods Corp.,* 164 USPQ 532, 533 (TTAB 1970) (applicant was not entitled to rely on assignment to establish first use made by its predecessor because, based on the record, all the assignor transferred was the name of the company). In other words, an assignment without any evidence of use by the assignor will not prove priority because the assignment document alone is not proof of use.

With respect to proving priority through the alleged use of its predecessor, Opposer relies upon both the direct knowledge of Todd Rome, and the sales records acquired from Mini Mania. Todd Rome's testimony that he was aware of Mini Mania's use of the MOKE trademark for years prior to 2016[33] is inadmissible hearsay because it is based on what his attorney told him and, even if it were not hearsay, we find it not credible because Opposer failed to explain, through admissible evidence, the basis of Mr. Rome's knowledge. *See* the testimony quoted above. In addition, Todd Rome testified, on cross-examination, that he did not know if Mini Mania labeled its products with the MOKE trademark.[34] Thus, Todd Rome's testimony is simply too

---

[33] Rome Testimony Decl. ¶3 (24 TTABVUE 3).

[34] Rome Cross-Examination Dep., p. 49 (42 TABVUE 51).

> Q. Do you know if the products [Mini Mania] sold were labelled with a Moke mark?

> A. Me, specifically, I do not know.

vague with respect to when and how Mini Mania used the MOKE trademark. It is also inconsistent and contradictory. Consequently, it fails to persuade us.

The Mini Mania sales records do not show trademark use with any MOKE vehicles or vehicle components. The sales records are a summary comprising 60 pages of chronologically dated transactions from January 1, 1993 to November 23, 2016. The sales record list includes a description of the product (i.e., lamp assemblies, lens, speedo cable, etc.) next to the term MOKE. Standing alone, the sales records do not prove that Mini Mania used the MOKE trademark on any goods sold in commerce. There is no testimony or other evidence that Mini Mania used MOKE as a trademark for vehicles or vehicle parts. The presence of the word MOKE in the description of a transaction listed in an internal sales summary does not equate to the presence of the mark MOKE on the product acting as a trademark for the purchaser. As noted above, Todd Rome lacked personal knowledge as to whether Mini Mania labelled its products with the MOKE mark.

Although Mini Mania provided Opposer with the sales records discussed above, there is no testimony from anyone with personal knowledge that Mini Mania used the MOKE trademark to identify and distinguish MOKE brand vehicles or vehicle components. Todd Rome did not competently testify that Mini Mania previously used the MOKE trademark that Mini Mania assigned to Opposer. In addition to the testimony discussed above, Todd Rome also testified as follows:

> Q. Do you know where Mini Mania obtained the product it sold?
>
> A. I don't know.

Q. Do you know if they obtained them from British Motor Company?

A. I do not know where they got them.

Q. Do you know if they were - - when I said "they," I'm talking about Mini Mania - - was a distributor for someone else internationally?

A. I don't know the answer.

Q. Do you know if Mini Mania manufactured the products they sold themselves?

                    *       *       *

A. I don't know. I would assume they do some. They've been around a long time. I'm not sure.

Q. Do you know if Mini Mania repackaged the products they received or if they were sold in the original packaging from the manufacturer?

                    *       *       *

A. I have no idea.

Q. Do you know if the products they sold were labelled with the Moke mark?

A. Me, specifically, I do not know.

Q. You don't know what kind of arrangement they had with the manufacturer of their products?

A. I do not know their relationship. It dates back to 1972 or '74.

Q. Do you know if Mini Mania was a distributor for Moke International products?

A. I don't believe so.

Q. But you don't know?

> A. I do not know. I would have known but I don't know.[35]

Opposer argues that Todd Rome testified to facts about which he had personal knowledge. That may be true, but it is clear that the facts of which he may have had personal knowledge were not nearly specific enough to establish priority through Mini Mania's rights. As noted above, Todd Rome had no credible basis for his purported knowledge regarding the use of MOKE either (a) as a trademark, or (b) assuming there was trademark use, that use was by, or accrued to the benefit of, Mini Mania. There is no nexus between the appearance of the word MOKE in the sales records and the required trademark use on the goods in commerce. If there is no proof that Mini Mania used the trademark in commerce prior to the assignment to Opposer, then there is no proof that Opposer obtained any trademark rights through the assignment. *See, e.g.*, *Karsten Mfg. Corp. v. Editoy AG*, 79 USPQ2d 1783, 1790 n.9 (TTAB 2006) ("the law is well established that an assignee stands in the shoes of its assignor"). *See also A & L Labs., Inc. v. Bou-Matic LLC*, 429 F.3d 775, 77 USPQ2d 1248, 1252 (8th Cir. 2005) ("Trademark ownership may be assigned, but the assignor may transfer only what it owns. Before Bou-Matic may be declared owner of all sixty-seven marks, it must show DEC owned or used all sixty-seven.") (citation omitted).

Thus, we have no testimony from Todd Rome, or anyone else, demonstrating his or her personal knowledge of Mini Mania's use of the MOKE trademark prior to the November 14, 2016 assignment to Opposer from Mini Mania. Accordingly, Opposer

---

[35] Rome Cross-Examination Dep., pp. 48-49 (42 TTABVUE 50-51).

has failed to prove prior use of the MOKE trademark. We emphasize that we have not evaluated each piece of evidence in isolation, but rather viewed the evidence as a whole. *See W. Fla. Seafood*, 31 USPQ2d at 1663.

Prior use is a necessary element of any claim of likelihood of confusion under Section 2(d) of the Trademark Act. We need not reach the merits of the likelihood of confusion claim because without proof of priority, Opposer cannot prevail. *See Life Zone Inc. v. Middleman Grp., Inc.*, 87 USPQ2d 1953, 1960 (TTAB 2008); *see also Exec. Coach Builders, Inc. v. SPV Coach Co.*, 123 USPQ2d 1175, 1199 (TTAB 2017).

The Section 2(d) likelihood of confusion claim is dismissed.

## IV. Whether the parties tried Opposer's claim that Applicant's application is void ab initio by implied consent.

As indicated above, Opposer filed a Notice of Opposition against the registration of Applicant's mark on the ground of likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). Nevertheless, in its brief, Opposer argues that Applicant's application for the MOKE and design trademark is void ab initio on the ground that Applicant is not the owner of the mark.[36] Applicant, in its brief, objected to Opposer's claim that Applicant's application is void ab initio on the ground that Opposer did not plead that claim, nor did Opposer seek to amend its Notice of Opposition to add it.[37]

---

[36] Opposer's Brief, p. vii and 11-12 (47 TTABVUE 8 and 19-20). Section 1(a)(1) of the Trademark Act, 15 U.S.C. § 1051(a)(1), is the statutory basis for a claim that Applicant is not the owner of the mark because it reads, in pertinent part, "The owner of a trademark used in commerce may request registration of its trademark on the Principal Register." Thus, if an applicant is not the owner of a trademark, it may not request registration of the mark.

[37] Applicant's Brief, p. 17 (49 TTABVUE 19).

Opposer argues that it should be able to raise this claim because Opposer learned about the facts supporting the claim during the Reiner "Ray" Hoogenraad testimony deposition.[38] Mr. Hoogenraad was Applicant's former Chief Executive Officer.[39] Shortly after deposing Mr. Hoogenraad, Opposer filed a motion for summary judgment asserting that the application was void ab initio on the ground that Applicant is not the owner of the MOKE and design trademark.[40] Before Applicant filed its brief in opposition to Opposer's motion for summary judgment, the Board denied the motion for summary judgment as untimely because Opposer filed the motion for summary judgment after the deadline for pretrial disclosures had passed.[41] Thus, Opposer argues:

> There was no unfair surprise regarding this issue that would have interfered with the fair adjudication of this Opposition on the merits. Indeed, following Opposer's Motion for Summary Judgment, Applicant submitted two witness declarations and conducted a deposition. Applicant had sufficient time to submit evidence regarding Opposer's assertion that it does not own the MOKE logo mark, and

---

[38] 29 TTABVUE 36-38.

[39] Hoogenraad Testimony Dep., p. 7 (29 TABVUE 9); Hoogenraad Testimony Decl. ¶1 (28 TTABVUE 2).

[40] 21 TTABVUE.

[41] 22 TTABVUE 11. The Board "dismissed" Opposer's motion for summary judgment as untimely. The Board did not discuss the fact that Opposer was asserting an unpleaded claim, nor did the Board expressly or impliedly suggest that Opposer may assert the claim without seeking to amend its Notice of Opposition. The Board's practice, in this regard, is that a party may not obtain summary judgment on an unpleaded issue. TBMP § 528.07(a); *see also Omega SA v. Alpha Phi Omega*, 118 USPQ2d 1289, 1291 n.2, 1292 (TTAB 2016) (applicant may not obtain summary judgment on unpleaded defense*); Asian and W. Classics B.V. v. Selkow*, 92 USPQ2d 1478, 1480 (TTAB 2009) (petitioner cannot obtain summary judgment on an insufficiently pleaded fraud claim). It is also Board practice not to give any consideration to motions for summary judgment filed on or after the deadline for pretrial disclosures for the first testimony period. Trademark Rule 2.127(e)(1), 37 C.F.R. § 2.127(e)(1); TBMP § 528.02. We note that Opposer did not thereafter seek to amend its notice of opposition.

chose not to do so. Thus, Applicant waived any objections to this argument.[42]

The issues before us are whether the parties tried by implied consent the claim that the application was void ab initio because Applicant allegedly was not the owner of the MOKE and design trademark and, therefore, whether we should deem the pleadings amended pursuant to Fed. R. Civ. P. 15(b). Fed. R. Civ. P. 15(b) provides, in pertinent part, that when claims not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. It is clear from Applicant's objection in its brief that Applicant did not expressly consent to the trial of the claim that its application was void ab initio due to lack of ownership. We may find implied consent to the trial of an unpleaded issue where the nonmoving party: (1) raised no objection to the introduction of evidence on the issue, and (2) was fairly apprised that the evidence was being offered in support of the issue. TBMP § 507.03(b); *see also Morgan Creek Prods. Inc. v. Foria Int'l Inc.*, 91 USPQ2d 1134, 1138 (TTAB 2009). "Fairness dictates whether an issue has been tried by consent – there must be an absence of doubt that the nonmoving party is aware that the issue is being tried." *Id.* Here, we rely on the dictates of fairness to determine whether the following facts establish whether there was an absence of doubt that Applicant was aware that Opposer was trying the ownership issue.

---

[42] Opposer's Reply Brief, p. 7 (50 TTABVUE 16).

Mr. Hoogenraad testified during his testimony deposition that, after conducting "a Google search and a Google trademark search" regarding availability of the term MOKE, Applicant hired an unrelated third party, Miroslave Kefurt of Mirox Corp., to design and create the MOKE logo that Applicant is seeking to register.[43] On cross-examination, Hoogenraad testified that Applicant did not enter into a written contract with Mirox Corp. on a "work for hire" basis.[44] The only document that Mirox Corp. gave Applicant in connection with the MOKE logo was the MOKE logo itself.[45] This was the extent of the testimony relating to the creation of the MOKE logo sought to be registered.

Based on this testimony, Opposer asserts that Applicant is not the owner of the MOKE and design trademark because, under copyright law, Applicant is not the owner of the copyright for the MOKE logo.

> Mr. Hoogenraad was the Chief Executive Officer ("CEO") of ACG from 2001 until 2017. He unequivocally admitted that Applicant hired a third party, Mirox, to create the logo that Applicant is attempting to register. He also stated that this independent contractor created the font used in the logo. Here moreover, and *fatal* to Applicant's application under the requisite statutes, Mr. Hoogenraad stated that Applicant did not have a works made for hire agreement

---

[43] Hoogenraad Testimony Dep., p. 34-35 (29 TTABVUE 36-37). *See also* Hoogenraad Testimony Decl. ¶4 (28 TTABVUE 2) ("The design of the MOKE logo … was created by Miroslav Kefurt … through a company he owned, Mirox Corporation.").

[44] *Id.* at 35-36 (29 TTABVUE 37-38). This fact is irrelevant inasmuch as the design of the MOKE logo by a Mirox Corp. employee for Applicant does not fall within the definition of a work for hire pursuant to 17 U.S.C. § 101. *See also Hydro-Dynamics Inc. v. George Putnam & Co. Inc.*, 811 F.2d 1470, 1 USPQ2d 1772, 1774 (Fed. Cir. 1987) ("The requirements of both adoption and use devolve from the common law; trademark rights in the United States are acquired by such adoption and use … [and] mere invention, creation, or discussion of a trademark does not create [trademark] rights").

[45] *Id.* at 36 (29 TTABVUE 38).

> with Mirox, or any other documents for the creation of this logo except the transmission of a copy of the logo itself from Mirox to Applicant. Thus, at most, Applicant has an implied license to use Mirox's MOKE logo, but the rights in the mark rest with its author, Mirox.[46]

Although Opposer regards the testimony as a crucial admission regarding Applicant's lack of ownership of the mark, Opposer points to no facts, other than its untimely motion for summary judgment, supporting its position that the testimony deposition provided Applicant with notice that Opposer was adding a new claim.

Nor do we find that Opposer's untimely motion for summary judgment, by itself, apprised Applicant that Opposer was asserting a new claim because the Board did not discuss the unpleaded claim in denying the motion on procedural grounds before Applicant filed a responsive brief. Indeed, it appears that Applicant did not interpret Opposer's motion for summary judgment as proffering a new claim because Applicant did not introduce any testimony or other evidence expressly to address the ownership issue. *See Morgan Creek Prods. Inc.*, 91 USPQ2d at 1139 ("The fact that applicant took no redirect after the testimony with respect to dress shirts was elicited on cross examination is a further indication that applicant did not regard the issue of fraud as having been tried.").

Importantly, Opposer did nothing after the Board denied Opposer's motion for summary judgment to apprise Applicant that it intended to re-raise this unpleaded claim when trial commenced. After denying summary judgment, the Board reset trial

---

[46] Opposer's Brief, p. 11 (47 TTABVUE 19).

dates, including Opposer's trial period.[47] Pursuant to that order, Opposer introduced only the Todd Rome testimony declaration into evidence (but not Mr. Hoogenraad's), and Todd Rome did not testify about the alleged lack of ownership of Applicant's MOKE and design trademark. Opposer did not introduce, at trial, any other testimony or evidence pertinent to its purported claim that Applicant's application was void ab initio. There is nothing in Opposer's trial record that put Applicant on notice that Opposer was asserting an additional claim.

"The non-moving party must be aware that the issue is being tried, and therefore there should be no doubt on this matter." *Morgan Creek Prods. Inc.*, 91 USPQ2d at 1139. Opposer had the opportunity through its Notice of Opposition to advise Applicant of the grounds it wished to pursue, and had the opportunity, if new grounds came to its attention, to file a motion to amend the pleading under Fed. R. Civ. P. 15(a). There is no evidence of any communication in which Opposer told Applicant that Opposer intended to add an additional claim to the Notice of Opposition. Because Reiner "Ray" Hoogenraad's testimony about the logo and the prior summary judgment motion did not fairly apprise Applicant of the non-ownership claim and because Opposer completed its trial period without introducing any testimony or evidence referring to the new claim, Applicant was not on sufficient notice that Opposer intended to assert that claim. Accordingly, we find that the parties did not

---

[47] 22 TTABVUE 13.

try by implied consent the claim that Applicant's application was void ab initio and, therefore, we will not amend the pleadings to include that claim.[48]

**Decision**: The opposition is dismissed.

---

[48] We further note that, even if we considered this late-asserted claim, there appear to be significant gaps in it. For example, ownership of a copyright in a design does not, without more, establish that the copyright owner owns any trademark rights in marks that include the design.